394 P.2d 985

**BOARD OF EDUCATION OF the CITY OF AZTEC, New Mexico, Petitioner-Appellant,**

**v.**

**Earl E. HARTLEY, Attorney General of the State of New Mexico, Respondent-Appellee.**

**No. 7479.**

Supreme Court of New Mexico.

Aug. 24, 1964.

Standley, Kegel, Campos & Cook, Santa Fe, for appellant.

Earl E. Hartley, Atty. Gen., Thomas A. Donnelly, Asst. Atty. Gen., Santa Fe, for appellee.

CARMODY, Justice.

The attorney general refused to issue a certificate of approval of a school bond issue, for bonds which had been voted by the electors in the district. The board then sought, by mandamus, to require the issuance of a certificate of approval, and it is from the quashing of the alternative writ and the dismissal of the cause that the board appeals.

The facts upon which the trial court's decision is based were stipulated and were to the effect that the resolution calling for the election, the notice of the election, the ballot used in the election, and the publication of the resolution calling the election all stated, in one way or the other, that the purpose of such election was to issue bonds in the total sum of $480,000 "for school purposes." It was further stipulated that there was no litigation pending or threatened, contesting the bond issue, and that the sole question was whether the resolution, notice, publication and form of the ballot violated art. IX of § 11 of the Constitution of New Mexico and were not in substantial conformity with certain sections of the

statute, and whether such non-conformity was cured by § 73-8-32, N.M.S.A.1953.

■ It may be generally stated that the attorney general maintained that the language "for school purposes," with no other qualification, is too broad and therefore violates the constitutional provision, because such language does not sufficiently apprise the voter of the exact purpose for which the election was held. In this appeal, the board first maintains that any claimed non-conformity in the language used was cured, because §§ 73-8-31 and 73-8-32, N.M.S.A.1953, place a limitation on the time in which suit must be instituted, either to contest the validity of the election resolution or to contest the validity of the proceedings subsequent to the election resolution. The gist of the board's argument is that the above cited statutes cured all defects in school bond proceedings other than defects involving violations of the provisions of the constitution, as generally held in Taos County Board of Education v. Sedillo, 1940, 44 N.M. 300, 101 P.2d 1027. It is also urged in this connection that the Sedillo case, supra, stated that the attorney general's duties with reference to approving or rejecting transcripts of school bond proceedings are ministerial and are subject to judicial review by mandamus. Thus, by innuendo, the board claims that the attorney general can do nothing except approve the proceedings, once the period of limitation has passed. The attorney general, on the contrary, argues that since the election proceedings violated the constitution, the curative sections simply do not apply.

■■ We agree with the attorney general, and, in substance, that was our holding in Board of Education of Gallup Municipal School Dist. v. Robinson, 1953, 57 N.M. 445, 259 P.2d 1028. In addition, it is obvious that the two curative sections refer only to a limitation period as to the institution of suits in the district court to contest the validity of school bond elections. Here, the attorney general has instituted no suit, nor is he required to do so—he merely performed his statutory duty upon receiving a transcript of the proceedings.

We would note in passing that to carry the board's contention to its ultimate conclusion could foreclose the attorney general from taking any action except approving the bond issue, should the local officials delay submission of the transcript for more than ten days after the election. Such an argument as made by the board would, in effect, require the attorney general to take affirmative action in policing every school bond election in the state within a limited period so as to require the impossible. Such a result certainly was not contemplated by the legislature when it placed the duty of approval or disapproval in the attorney

general. Section 73–8–35, N.M.S.A.1953. We find no merit in this assertion on the part of the board.

The board's final contention is that the use of the words "for school purposes" amounted to substantial compliance with art. IX, § 11 of the New Mexico Constitution, which, insofar as pertinent, reads:

"No school district shall borrow money, except for the purpose of erecting and furnishing school buildings or purchasing school grounds, and in such cases only when the proposition to create the debt shall have been submitted to a vote of such qualified electors of the district as are owners of real estate within such school district, and a majority of those voting on the question shall have voted in favor of creating such debt. * * *"

■ This argument is that the use of the aforementioned words, and nothing more, sufficiently informed the electorate of the purpose of the bond issue and that it does not violate the constitution because it must be presumed that the money raised from the sale of the bonds will be used for constitutional purposes and that if not, an injunction can be obtained to prevent an unconstitutional use. In part, the board relies upon certain language used in § 73–8–22, N.M.S.A.1953, which establishes the procedure to be followed by the board in ordering a bond election. It is true that in this section the words "for school purposes" are used, but this is hardly persuasive when it is noted that § 73–8–21, N.M.S.A. 1953, which in part deals with the form of the election petition, provides that the purpose of the bond issue should be specifically set out, as does § 73–8–24, N.M.S.A. 1953, requiring the publication of notice of the election. In addition, it must be apparent to anyone that the quoted words are extremely general and that there are many school purposes other than erecting and furnishing school buildings or purchasing school grounds which are encompassed within such a phrase. There is no indication in any of the proceedings other than that the funds obtained from the sale of the bonds will be used for something having to do with schools. "School purposes" could mean the purchase of school busses, increase of teachers' salaries, or any one of many other purposes, which would clearly contravene the provisions of the constitution.

Much as we sympathize with the action of the board, we cannot, by assuming that the proceeds would be properly used, read into the language that they would not be improperly used. There is no way to determine what was in the minds of the various electors who voted on the issuance of the bonds as to what they thought "school

purposes" meant. The phrase used is simply too all-inclusive and includes purposes prohibited by the constitution.

■ Thus the election proceedings were rendered invalid. We do not mean to say that the resolution, notice and ballot must include the exact words as stated in the constitution, but certainly the words used cannot be so broad that, in effect, the electorate is not advised of the actual purpose of the attempt to secure funds. See Tom v. Board of County Com'rs of Lincoln County, 1939, 43 N.M. 292, 92 P.2d 167, and Board of Education of Gallup Municipal School Dist. v. Robinson, supra.

Although the board argues that we should give a liberal interpretation to § 11 of art. IX of the Constitution, we do not believe that such a liberal construction as sought here would accomplish any purpose except nullifying the entire constitutional provision. By nothing which we said in Board of County Com'rs of Bernalillo County v. McCulloh, 1948, 52 N.M. 210, 195 P.2d 1005, or in Carper v. Board of County Com'rs of Eddy County, 1953, 57 N.M. 137, 255 P.2d 673, is there justification for the broad assertion made by the board.

The judgment of the district court will be affirmed. It is so ordered.

COMPTON, C. J., and NOBLE, J., concur.