Raymond MONTGOMERY et al., Appellants,

v.

REORGANIZED SCHOOL DISTRICT NO. 1, DADE COUNTY, Missouri; and the members of its Board of Education as follows: Ira Fortner, President, Leslie Bishop, Vice President, Charles F. Lemons, Treasurer, Theo. Kaelke, Secretary, Edward Evans, W. A. Willis; and Haskel Holman, State Auditor, Respondents.

No. 48000.

Supreme Court of Missouri,

Division No. 2.

Nov. 14, 1960.

Amos Wight, Ewing, Ewing, Ewing, Carter & Wight, Nevada, Mo., for appellants.

Combs & Combs, J. Carrol Combs, Clyde E. Combs, Lamar, for respondents.

STOCKARD, Commissioner.

Appellants have appealed from the judgment of the Circuit Court of Dade County denying their petition to enjoin the Reorganized School District No. 1, Dade County, Missouri (hereafter referred to as the "school district"), the members of its board of directors and the State Auditor from issuing, registering and negotiating bonds which were approved by more than two-thirds of those voting at a special election held on July 23, 1959. On this appeal appellants contend that the election was void because the notice of election was insufficient in that the required number of notices were not posted in five public places, and also that the election was fraudulent and void because of certain conduct of the board of directors.

The school district comprises approximately the western one third of Dade County. It is twenty miles in length north and south, and nine to fourteen miles in width. The high school and a grade school are located in the Town of Lockwood near the center of the district, and a second grade school is located in the northern part of the district in an area known as Sylvania. On July 2, 1959, the board of directors of the school district called a special election to be held on July 23, 1959 to submit to the voters the proposition of whether the school district should be authorized to borrow the sum of $295,000

and to issue its negotiable bonds therefor for the purpose of purchasing a site and constructing a new school building. There is no challenge concerning the call of the election, the substance of the notices or the period of posting. The challenge is limited to the contention that the required number of notices were not posted in "five public places" as required by § 165.040 Laws of Missouri 1953, p. 509, V.A.M.S. pocket parts. The notices were posted in the following places:

"One on the front door of the Lockwood Highschool building, facing south.

"One on the front door of the Lockwood Highschool music room, facing north.

"One on the door of the Sylvania school building, facing west.

"One on the front window of the Lockwood Luminary office, facing east.

"One on the front door of the former Freedom school house, facing south.

"One on the window of Haubein's General Store, facing east, in Meinert, Missouri."

■ In the points of their brief pertaining to the posting of the required notices appellants challenge only the three notices posted on the school buildings, and their challenge as to them is limited to the contention that these notices were not posted in a public place because they were "inaccessible to individuals of the public who must become trespassers to read the notices." Appellants rely on § 560.465 RSMo 1949, V.A.M.S., which makes it a misdemeanor for one to injure, deface or destroy a building used as a schoolhouse; to "commit any trespass" by removing or polluting without permission the water kept for the supply of the schoolhouse; and to "trespass upon the premises" of a school-

house in any manner. They cite Mawson v. Vess Beverage Company, Mo.App., 173 S.W.2d 606, and Houck v. L. A. Tucker Truck Lines, Mo.App., 131 S.W.2d 366. The effect of the Mawson case insofar as material is that every *unauthorized* entry upon land may constitute a trespass (but see City of Cape Girardeau v. Pankey, Mo.App., 224 S.W.2d 588), and the Houck case holds that in civil actions for trespass the intent of the party committing the trespass is immaterial. Appellants have made no effort to demonstrate why an entry upon the school grounds to read the notices of election would be unauthorized, and an authorized entry does not constitute a trespass. See 87 C.J.S. Trespass § 73. We find no merit to this contention.

■ Appellants also contend that the trial court erred "in admitting into evidence * * * an affidavit of posting amending the original report of posting by adding the posting of a notice of the Haubein Store in Meinert, Missouri." Apparently at or sometime subsequent to the time the clerk posted the notices he made a report to the school board in the form of an affidavit that he had posted five notices. This affidavit did not mention the notice of election posted on the Haubein Store. Appellants objected to the introduction in evidence of an amended affidavit in which the clerk reported that he posted six notices at the places previously stated. They do not contend that the notice at the Haubein Store was not in fact posted.

We find no statute requiring an affidavit of posting by the clerk. If no affidavit had been made by him the school board could have shown that the notice at the Haubein Store and the other notices had in fact been posted. Also, if the original affidavit had included a reference to this notice, appellants would not have been bound thereby and could have shown that it had not in fact been posted. In any event, regardless of the purpose of this affidavit the clerk could amend it to recite the true and correct facts. Lake v. Riutcel, Mo.Sup., 249 S.W.2d 450;

Beauchamp v. Consolidated School District No. 4, 297 Mo. 64, 247 S.W. 1004, 1006; State ex rel. School Dist. of Affton v. Smith, 336 Mo. 703, 80 S.W.2d 858. This notice at the Haubein Store with the other five notices make a total of six, and § 165.040, supra, requires only the posting of five. We subsequently rule that all the notices were posted in a public place. Therefore, we need not rule appellants' further contention that the two notices posted on the school buildings in Lockwood constituted but a single posting.

Appellants advance additional reasons in the argument portion of their brief in support of their contention that the notices were not posted in public places. They assert that the notice posted on the front door of the high school was 73 feet from the street, the one posted on the front door of the music room was 39 feet from the street, and the one posted on the front door of the Sylvania School was 166 feet from the road. There is no requirement that these notices of election be posted in or next to a public street. The distance a notice is posted from a public street or road becomes important only when the actual place of posting depends upon the proximity of the public street or road in order to constitute a public place. See for example Wann v. Reorganized School District No. 6 of St. Francois County, Mo.Sup., 293 S.W.2d 408, 413–414, and Lake v. Riutcel, supra. We subsequently rule that these notices were posted in public places for reasons other than nearness to a public street or road.

Appellants also argue that "posting of notices on school buildings does not give publicity and attract attention of the general public" and is an "extremely poor place" to attract attention. " 'A public place' within the meaning of the statute [§ 165.040] is a relative and not an absolute term, and the determination of what is a 'public place' is a question partly of fact and partly of law. Lake v. Riutcel, Mo.Sup., 249 S.W.2d 450; People v. Simcox, 379 Ill. 347, 40 N.E.2d 525. Annotation, 2 A.L.R. 1008. The test which will generally determine the question of whether the notices were posted in public places within the meaning of the statute is whether the posting of the notices in the particular places fulfilled the purpose of giving the publicity contemplated by the nature of the notice required." Wann v. Reorganized School District No. 6 of St. Francois County, Mo.Sup., supra at page 413 of 293 S.W.2d. A public place "is any place where the public is permitted or invited to go or congregate, a place of common resort, a place where the public has a right to go and be." Wann v. Reorganized School District No. 6 of St. Francois County, supra at page 414 of 293 S.W.2d. Public school buildings by their very nature are public buildings, and members of the public have the right to go there with no limitation except that required in the interest of safety and good order. In many communities, particularly in rural communities, the public school building is the center of public activity, even in vacation. It frequently is the only building available for public meetings. Section 166.030 RSMo 1949, V.A.M.S., expressly authorizes the use of public school buildings for that purpose, and the evidence establishes that the three school buildings upon which the notices were posted were open to and frequently used by the public. Public school buildings are generally known as and accepted to be public places. 39 Am.Jur. Notice and Notices § 31; 2 A.L.R. 1010; Wilson v. Bucknam, 71 Me. 545. It is interesting to note that in Walker v. Sundermeyer, 271 Mo. 579, 197 S.W. 102, 2 A.L.R. 1005, where the notices were to be posted in the "most" public places, the posting of notices on trees was justified on the ground that in the district there was no office, store, shop or *schoolhouse*. Also, in Lutgen v. Board of Com'rs of Stearns County, 99 Minn. 499, 110 N.W. 1, a notice was held to have been posted in a public place when placed on an elm tree near a schoolhouse. The court there commented: "It was a 'public place' in the usual acceptation of the term."

It is possible that a notice could be posted on a schoolhouse in such a manner or in an obscure place so that it could not properly be considered to be a public place. But here the notices were posted on the front door of each public building in full view of anyone who visited these public places. The substance of appellants' argument is summed up in their contention that "the notices posted on the door of the high school, the music room and Sylvania School could have been posted on trees or posts at main road intersections in the district and thus given the publicity intended by the statute." There are undoubtedly many other places in the school district where other persons would have posted the notices if they had the authority to make the selection, but the statute vests that authority in the clerk of the school board and it does not require that the notices be posted in the most public place. Wann v. Reorganized School District No. 6 of St. Francois County, supra. The fact that people disagree as to the best place to post the notices demonstrates the necessity that the authority to select the places be vested in some person or group. We conclude that the three notices posted on the school buildings were posted in public places within the meaning of § 165.040, and that the clerk of the school board did not abuse his discretion in the selection of these three places.

Appellants next argue that the notice posted on the front door of the former Freedom School was not in a public place. That building was formerly used as a schoolhouse, but in 1952 it was purchased by residents of the surrounding community and was being used as a community center. It was the regular voting place for various types of elections; Sunday School was held there regularly; and it was used as a public gathering place. Apparently it was the only public building in the area. The only reason advanced by appellants is that the building was in a remote, sparsely settled area. We doubt that the evidence supports this conclusion, but assuming it to be true, that does not mean that a notice posted on the front door of this public building was not in a public place. We would not be justified in ruling that it was not posted in a public place within the meaning of § 165.040.

Appellants also argue that the notice posted on the front window of the Haubein general store in Meinert, Missouri was not posted in a public place. This store faced the main street and was the trade and social center of the community. It was located at the intersection of "two main roads, one going directly in front of the window * * * [where the notice was posted], and the other on the other side." It seems to be appellants' contention that more people used a side entrance to the store from a parking lot than the front entrance to the store, and for that reason the posting on the front window was not a public place. Perhaps the side door was "more public," but that did not prevent the front window facing the main street from being a public place.

Appellants admit the notice posted on the front window of the Lockwood Luminary was posted in a public place and we have ruled that at least four others were posted in public places. Therefore, we find no merit to appellants' contentions that the minimum number of notices were not posted in public places as required by § 165.040.

Appellants contend that the conduct and and acts of the school board were such as to show an intent to minimize the vote in areas of the school district opposed to the proposition to borrow money and issue bonds, and to augment the vote in favor of the proposition in areas favorable to the proposition. They assert that for this reason the election was fraudulent and void.

In 1957 two elections were held on proposals that the school district borrow money and issue bonds to finance the construction of a new school. At both of these elections the school board designated six voting places, one at the music room of the Lock-

wood High School and the other five in the rural areas of the district. In each election a majority of the votes cast were in favor of the pending proposition, but in neither election was the required two-thirds majority received. The vote at the Lockwood voting place was in favor of the propositions, and the aggregate vote in the other five voting places was against the bond proposals. The largest adverse vote on a percentage basis was at the Sylvania School. The only voting place of the five (other than Lockwood) where even a simple majority in favor of the propositions was received was at the former Freedom School. Immediately following the second bond election in 1957 the school board announced a "policy," as stated in its minutes, "to hold future elections in the following places, Sylvania School, Lockwood High School and former Freedom School." The person who was president of the school board in 1957 testified that this action was taken to reduce the expenses of future elections, which amounted to about $30 for each polling place plus the cost of poll books. Sylvania School is located in the northern part of the district, the Lockwood High School is in the center, and former Freedom School is in the southern portion. They are located geographically to be reasonably available to all residents of the district. In the annual school elections held in 1958 and 1959 the above three places, and only those, were designated by the board as polling places. As far as shown by the record no question was raised or protest made concerning this procedure. When the school board called the election now being challenged the only polling places designated by the board were the same three used in the two preceding annual school elections, and again, as far as shown by the record, no question was raised or protest made prior to the filing of this suit for an injunction.

In June 1959 the school board called a mass meeting at the Lockwood High School to ascertain public opinion concerning the proposal to build an additional school building, and it caused to be printed and distributed throughout the school district 500 handbills inviting all interested persons to attend. The handbills stated the purpose, time and place of the mass meeting. After the election was called the clerk of the board posted the six official notices of election at the places previously mentioned, and the school board caused to be published a copy of the official notice of election in two editions of the Lockwood Luminary, a weekly newspaper and the only newspaper published in the school district. In addition, the Luminary published two front page news items concerning the pending election, and in one the date of the election was contained in the headlines. This newspaper has approximately 1,000 subscribers in the school district, 545 of whom are in the Town of Lockwood, 375 are on rural mail routes originating in Lockwood, and about 80 are on other rural routes extending into the district. The school board also caused to be printed 1,000 copies of a brochure which stated the date of the election and set forth in detail the building plans including a sketch of the proposed building, the cost of the building and the plan for retirement of the bonds if they were authorized. Approximately 700 of these brochures were mailed as "boxholder mail" to all box holders in the Town of Lockwood and on all the rural mail routes originating at Lockwood, and 89 copies were individually addressed and mailed to residents of the school district who lived on rural routes originating outside of the district at Jerico Springs, Lamar, Golden City, Greenfield and South Greenfield. As far as is revealed by the record the only post office in the district is at Lockwood. The remainder of the brochures were distributed to various stores and business establishments in the school district including Kings Point, the store at Meinert, the Sylvania store, March Implement Company west of Lockwood, Cedarville store, "the bank," and the post office. The superintendent of schools testified that he placed copies of the brochure in "every available

place" and that he made certain that he "didn't miss a one."

■ There is no statutory requirement as to the number of voting places in a school district for a special election. We note that § 165.330 RSMo 1949, V.A.M.S., pertaining to annual school elections, provides that the voting places shall be "at such convenient place or places within the district as the board may designate." No mandatory provision of the Constitution or statutes regulating the designation of voting places has been violated, and appellants do not claim such a violation occurred. We are not able to find any evidence from which it reasonably may be concluded that the school board reduced the number of voting places for the purpose of minimizing the vote in areas where in previous years the vote on bond proposals had been adverse. The designation of the three voting places was in accord with a previously established policy which had been followed without objection in two previous annual school elections. The three voting places were fairly located both geographically and in respect to the concentration of the population of the district. Also, it was at the Sylvania School where the vote against the previous bond proposals received the highest percentage. The total vote at the challenged election was 95 more than at the first election held in 1957 and 95 less than at the second. We find no merit to the contention of appellants that the designation by the school board of but three voting places in the school district constituted fraud in the conduct of the election.

Appellants do not contend that the school board should not have given any publicity to the election except by the posting of the official notices thereof, and if made such a contention would be untenable. The school board is not required to assume a false appearance of neutrality. It should, however, be fair in presenting and distributing publicity concerning the election. The brochure fairly presented the facts concerning the need and the plans for the school, and it concluded with the statement that each voter should "give serious thought to the information herein presented and make it your business to go to the polls and vote as you see fit on Thursday, July 23, 1959 * * *." By causing copies of the notice of election to be printed in the Lockwood Luminary and by printing and distributing the brochure the school board violated no statutory provision. The real contention of appellants, when it is analyzed, appears to be that if the school board gave any publicity to the election other than by posting the official notices it had the duty to see that every one in the district received that publicity, and the failure to do so would constitute fraud in the conduct of the election. Not only is this contention unsound, but the evidence establishes that the school board exercised a reasonable effort to obtain a fair and full distribution of the publicity throughout the district. We do not agree with appellants' statement in their brief that "no publicity was given in those areas where the votes were shown by the two past elections to be opposed to the bonds." We find it difficult to visualize how the school board reasonably could have given a wider and more complete coverage of the publicity it gratuitously provided. Appellants do not set forth what more they think the school board should have done to give proper publicity. They imply that too much publicity was given in Lockwood. Apparently it is their position that when the school board published the notice in the only newspaper published in the district and distributed copies of the brochures to all the box holders served through the Lockwood post office, it engaged in some kind of fraud because it so happened that a little more than half of the subscribers of the Luminary who lived in the district resided in Lockwood, and 225 of the 685 box holders resided in Lockwood. With such a conclusion we cannot possibly agree.

■ Strict compliance with statutory provisions as to the method and manner of

holding special elections involving the authorization of the issuance of school bonds is required, Young v. Brassfield, Mo.App., 228 S.W.2d 823, but " 'elections are not lightly set aside.' " Armantrout v. Bohon, 349 Mo. 667, 162 S.W.2d 867, 871. When the basis of alleged invalidity is fraud in the conduct of the election, as here, the charge should be supported by what is commonly referred to as clear, cogent and convincing evidence. We find nothing to warrant any inference of fraud on the part of the school board in the conduct of the election in this case.

The judgment of the trial court is affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C. is adopted as the opinion of the Court.

All concur.